Williams, Judge,
delivered the opinion of the court:
Plaintiff seeks to recover the sum of $11,609.71 as damages arising out of an alleged breach of a contract between plaintiff and the defendant for the construction of a post-office building at Rochester, Minnesota.
The amount claimed consists! of three separate items. '
1. $8,600.00, the salvage value of certain buildings on -the site of the work which the defendant permitted prior owners to remove therefrom, it being contended that under the contract plaintiff was to receive such buildings as a part of the contract price.
2. $2,606.59, additional expenses incurred by the plaintiff in the prosecution of the work caused from delays occasioned by the action of the Government, and
3. $Jfi3.12, the expense incurred .by plaintiff in removing from the site a quantity of .plaster and other debris left in the cellars of the various buildings by the former owners in removing their structures therefrom.
These items of the claim will be considered in the order of their statement.
The specifications for the building which accompanied the invitation to bid, provided in part as follows:
3. The contractor shall take the site as he finds it and shall remove all old structures within the lot lines. This work shall include the removal of interior walls, piers, partitions, chimneys, stairs, etc., in old basements or cellars. Exterior walls of basements, cellars or other excavations below grade that act as retaining walls, and all walks, paving, or floor slabs on earth, will be removed as specified under excavation, filling and grading.
4. Common brick and framing lumber taken from old structures may be reused by the contractor in the new construction provided they are suitable and comply with the contract requirements. All other material removed shall become the property of the contractor and shall be taken from the premises as the storage of such old materials or equipment on the site will not be permitted.
*90 5. Bidders shall take into account the salvage value to them of materials removed, and such value shall be reflected in the bids.
Between the-time of advertising for -bids and the time of the opening of the same, there were ten buildings located on- the site of the proposed post office building. Plaintiff, prior to the submission of its bids, went upon the premises and appraised all the buildings located thereon and determined the salvage value of each building. Plaintiff’s appraisal of the buildings on the site disclosed that the salvage value to it was $8,600, and having determined by a survey of the plans and specifications what the bid for the furnishing of the labor and materials and construction of the post office building should be, deducted from such amount the sum of $8,600 and submitted its bid for the construction of the building for- the sum of $163,500, which represented the amount plaintiff had determined as a proper payment for the work minus the $8,600 representing the salvage value of the buildings referred to.
About a year prior to the execution of the contract in this case the defendant instituted proceedings in the United States District Court for the condemnation of the various lots on which the post office building was to be erected. As a result of these proceedings the District Court duly entered its order condemning, the site and appointing commissioners to assess the damages. The various. owners and the defendant came to an agreement as to the compensation to be paid to the various owners of the lots- involved, as a result of which the court awarded title to the lots to the defendant . and awarded' to prior owners of the lots the houses and structures located thereon, with directions that the same be promptly demolished or removed from the premises, the final order of the court in this respect having been made on February 2, 1933, .one day prior to the formal execution of the contract. Plaintiff was not a party to the condemnation proceedings, and had no notice either of the negotiations leading to the order of February 2, 1933; or of the entering of such order, although plaintiff had learned prior to the acceptance of its bid and the formal execution of the contract that demolition of the buildings on the site was in *91 progress by the former owners thereof. Before commencement of the work on April 8,. 1933, all the buildings on the premises had been demolished by their former owners except one, which was in the process of demolition.
It is a well-settled rule of law that the advertisement for bids and the bid itself when accepted constitute a part of the contract with the government and must be considered in construing the contract. Mueller v. United States, 19 C. Cls. 581 (affirmed 113 U. S. 153); Harvey v. United States, 105 U. S. 671; Proffit v. United States, 42 C. Cls. 248. In the latter case the court said:
It is well settled that the common-law rule whereby all prior understandings are merged in the subsequent written contract can not be strictly applied to contracts of this character, because they are required to be made by advertisement, bids, and acceptances. These three steps constitute the real contract, and the written instrument is merely a reduction to form of the intention of the parties, as expressed in the prior advertisement, bid, and acceptance.
The specifications in plain unequivocal terms required the demolition and removal of all existing buildings from the site and in equally plain and unequivocal terms provided that all material removed “shall become the property” of the contractor. The specifications also required bidders to take into account the salvage value to them of materials removed and that “such value shall be reflected in the bids.” Plaintiff in good faith determined the salvage value of the buildings to be removed was $8,600, and in submitting its bid deducted this amount from what it would otherwise have bid. In these circumstances it is immaterial that the formal contract did not in terms provide that the buildings standing on the site should become the property of the plaintiff, as that provision became part of the contract by reason of the advertisement, bid, and acceptance.
Two days after work was started on the contract plaintiff wrote the supervising architect calling his attention to the fact that the structures which were on the site at the time its bids were submitted had been removed by the former owners and asked for his interpretation of the specifications in respect' thereto. Receiving no answer to this letter plain *92 tiff shortly thereafter again wrote the supervising architect and filed a claim for $8,600, the amount it had deducted from its bid as the salvage value of the structures to be removed from the site. What action the supervising architect took upon the claim is not shown other than that no part of it was ever paid to plaintiff.
The defendant contends that plaintiff waived all rights to compensation for failure of the Government to deliver the structures standing on the site when its bid was submitted because it knew at the time the bid was accepted and the formal contract entered into that the structures had been removed from the site by the former owners. It is contended that plaintiff was then under a duty of protesting to the defendant against the changed conditions that had arisen since the submission of its bid, or asserting the right to additional compensation, and that not having done either its claim must fall. We have examined with care the decisions cited by the defendant in support of this contention and it is sufficient to say that none of them has application to the facts in this case.
The failure of the defendant to deliver the buildings in question to plaintiff for demolition and removal from the premises was a breach of the contract, by reason of which plaintiff sustained a loss of the fair and reasonable salvage value of such buildings. The findings show that $8,600 was a fair and reasonable salvage value of the buildings. Plaintiff is therefore entitled to recover in respect to this item of the claim.
Plaintiff was delayed by the defendant in the construction of the building. These delays began soon after the commencement of the work and continued during the remainder of the Spring, all of the Summer, and part of the Pall. Plaintiff wrote the supervising architect about the delays, listing them, reviewing their causes, and asked for 100 days’ extension of the contract time because of them. The 100 days’ extension was granted as requested. Plaintiff had planned its building operations to complete the building in ten months. Had not plaintiff encountered the delays referred to the building would have been enclosed *93 and under coyer on or about October 1, 1933. Because of the delays the building was enclosed and under cover, and the heating plant installed, on December 17, 1933, and completed on July 17, 1934.
Because of delays caused by the defendant plaintiff incurred additional expenses in the completion of the work which it would not have otherwise incurred. These additional expenses are set out in detail in Finding No. 16, and need not be restated here. It need only be said that the net amount of the additional expenses incurred is $2,606.59. The rule is so well settled that the defendant is liable to plaintiff for the amount of these additional expenses that the citation of authorities in its support is unnecessary. Plaintiff is entitled to recover on this item of the claim.
There was a large amount of plaster and debris left in the cellars of the buildings demolished and removed by the former owners which plaintiff removed. The third item of the claim is for the sum of $403.12, as' compensation for the removal of such plaster and debris. The Findings show that this was reasonable compensation for such services but since plaintiff was required by the specifications to remove all rubbish and debris resulting from the work of demolition, including the clearing of basements, cellars, and similar excavations, plaintiff cannot recover on this item. The situation is not changed by the fact that the former owners of the buildings rather than plaintiff demolished and removed them from the premises. It is obvious that had plaintiff performed the work of demolishing and removing the buildings plaster and other debris would have accumulated in the cellars, which plaintiff would have been under contract duty of removing, just as it did in this case. Plaintiff was obligated to perform this service as a part of the contract and compensation therefor was included in the contract price.
Plaintiff is entitled to recover in respect to items 1 and 2 of the claim, amounting to $11,206.59, and judgment in that amount is hereby awarded. It is so ordered.
Whaley, Judge.; Littleton, Judge; Green, Judge; and Booth, Chief Justice, concur.